489 P.2d 1204

**Avis O. READ, Appellant,**

v.

**CITY OF SCOTTSDALE, Appellee.**

**No. 10439.**

Supreme Court of Arizona,
In Division.
*Oct. 28, 1971.*

Machmer, Lehman & Cantor by Robert H. Schlosser, Phoenix, for appellant.

Richard R. Filler, City Atty., City of Scottsdale, for appellee.

LOCKWOOD, Justice:

This is an appeal from an order of the Superior Court of Maricopa County, granting summary judgment in favor of the City of Scottsdale, that city having been plaintiff in the condemnation action below.

The pertinent facts are that in 1919, the Maricopa County Board of Supervisors, pursuant to § 5057 of the Revised Statutes of 1913 (as amended 1917, now appearing in modified form as A.R.S. §§ 18–201 to 18–205 [Supp.1972]), enacted a resolution declaring that various section lines passing through Maricopa County and the land to a distance of thirty-three feet on each side thereof, would henceforth be public roadways. In 1968, the City of Scottsdale brought this action to condemn a portion of one of those roadways, apparently believing that that land had reverted to private ownership in the years after 1919. The land sought to be condemned is situated along what is now known as McDonald Drive, in Scottsdale. The appellant, Mrs. Avis O. Read (hereinafter "Read"), owns property, including the land in question, on the northeast corner of the intersection of 76th Street and McDonald Drive. The city's complaint alleged that pursuant to a 1968 resolution of the Scottsdale Mayor and Council, the city sought to condemn the south thirty-three feet of the Read property (hereinafter "the 33-foot strip"), so that McDonald Drive could be widened.

Approximately fifteen months after Read had answered the complaint in condemnation, the city filed a motion for summary judgment and an affidavit alleging, for the first time, that because of the 1919 resolution and hearing establishing the roadway, Scottsdale was itself *already* the owner of the 33-foot strip. Read responded to the city's motion. The most significant of the numerous arguments raised in her affidavit was that in 1959, she and her ex-husband had been awarded a judgment quieting title to the 33-foot strip in them, and against Maricopa County and the State of Arizona. (The quiet title suit was not affirmatively defended by the county or state, other than the assertion of a state tax lien for one year.)

In support of its motion for summary judgment, the most significant point raised by the city was that the chain of title to the Read property had disclosed that there was an "exception" or encumbrance upon the 33-foot strip at the south boundary of the Read land. Therefore, the city argued, in 1951 when Read and her ex-husband had purchased the land, and in 1959 when they sued to quiet title to the land, they had been put on sufficient notice of the existing roadway easement that the 1959 judgment in favor of the Reads was somehow tainted. Moreover, the city urged, Read's 1959 complaint had not even mentioned the encumbrance upon the 33-foot strip so as to notify the county and state of the existence of a possible roadway.

The Superior Court granted the city's motion for summary judgment. Read has appealed that ruling and also the denial of her motions for a new trial and to vacate judgment.

■ We first deal with Read's allegation that Scottsdale had no right to bring the condemnation action or to receive summary judgment therein, on the ground that Scottsdale had not succeeded to the alleged interests of Maricopa County in the 33-foot strip. This argument has been rejected in Collins v. Wayland, 59 Ariz. 340, 127 P.2d 716 (1942), cert. denied, 318 U.S. 767, 63 S.Ct. 760, 87 L.Ed. 1138 (1943), which stated that upon annexation of land into a city, the title and jurisdiction of the streets within the annexed area vest in the city. When Scottsdale annexed the land in question, it succeeded to all of the right, title and interest of Maricopa County and the State of Arizona.

■ We now turn to the central issue of this appeal—whether summary judgment was properly granted. Under Arizona Rules of Civil Procedure, summary judgment may be granted where there are no genuine issues of material fact to be resolved at trial. Ariz.R.Civ.P. 56(c), 16 A.R.S.; Hoopes v. Lamb, 102 Ariz. 335,

429 P.2d 447 (1967). The primary purpose of summary judgment is to avoid the time and expense of a trial in cases where trial is unnecessary. James, Civil Procedure § 6.18 (1965).

In the instant condemnation case, the city moved for and was awarded summary judgment on the ground that the city already possessed title to the 33-foot strip because the 1919 resolution of the Board of Supervisors had allegedly established the roadway. We feel that summary judgment was improperly granted.

It is our opinion that title to the 33-foot strip vested in Read when the 1959 judgment was entered. It follows then that there is still a remaining issue of fact which must be resolved: the value of the 33-foot strip, i. e., the amount of compensation owing to Read as the owner of the property.

The complaint in Read's 1959 quiet title suit contained all of the requisites enumerated in the existing statute, A.R.S. § 12-1102 (1956), but did not mention the encumbrance upon the 33-foot strip. At that time, however, the statute did not require that plaintiff in a quiet title action as against the state should set forth with particularity the state's adverse claim of title. Therefore, it was proper for Read's complaint to make a mere general averment that one or more of the defendants was making "some claim adverse to the plaintiffs," without specifically mentioning the roadway encumbrance existing in the chain of title.

█ The state and county were both properly served in 1959, but neither responded to controvert Read's complaint, other than by assertion by the state of a lien for one year's taxes. Had they searched the chain of title, they would have discovered that each of the numerous deeds conveying the parcel between the years 1919 and 1959 had contained an "exception" or "subject to" clause indicating that the 33-foot strip was, or was subject to becoming, a public roadway of some sort. The record contains no evidence leading us to question the jurisdiction of the Superior Court, either as to the subject matter of the 1959 quiet title suit or as to the court's power over the parties involved. There has been no evidence of fraud on the part of Read or her ex-husband in obtaining the judgment therein, and consequently the city's suggestion that that judgment is tainted is without merit. No appeal of the judgment in favor of Read was taken by the county or the state. We are therefore compelled to recognize the 1959 judgment quieting title to the 33-foot strip in Read as a valid and final judgment—a judgment entitled to res judicata effect.[1]

Under the doctrine of res judicata, a final judgment which is rendered upon the merits, without fraud or collusion, and by a court of competent jurisdiction, is conclusive as to every point decided and as to every point which could have been raised by the record. Day v. Estate of Wiswall, 93 Ariz. 400, 381 P.2d 217 (1963); Di Orio v. Scottsdale, 2 Ariz.App. 329, 408 P. 2d 849 (1965). In the instant case, the parties' briefs have discussed not only res judicata but also collateral estoppel. Res judicata is often distinguished from the doctrine of collateral estoppel, the latter being a part of the former. Di Orio v. Scottsdale, *supra;* James, Civil Procedure § 11.9 (1965); 65 Harv.L.Rev. 818, at 840 (1952). In 1876, the United States Supreme Court set forth what some commentators consider to be the foremost state-

---

1. Although the question is now moot, we merely note that whether Read's claim to the 33-foot strip would have prevailed had the county or state chosen to affirmatively oppose it in 1959, would depend upon whether or not the County Board of Supervisors had properly established the roadway pursuant to Rev.Stat.Ariz. § 5057 (1913), the statute in effect in 1919, State ex rel Herman v. Electrical Dist. No. 2 of Pinal County, 106 Ariz. 242, at 243, 474 P.2d 833, at 834 (1970), and upon our interpretation of the scope of A.R.S. § 18-152 (originally Rev.Code Ariz. § 1687 (1928), which is an act "curing" legal defects in the establishment of some public roadways.

ment of the distinction between res judicata and collateral estoppel:

"In the former case [res judicata], the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose, * * *. Such demand or claim having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

"But [under the doctrine of collateral estoppel] where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which finding or verdict was rendered." Cromwell v. County of Sac, 94 U.S. 351 at 352–353, 24 L.Ed. 195 at 197–198 (1876), quoted in James, Civil Procedure, at 550 (1965).

In the instant case, it is clear that the 1959 judgment is entitled to res judicata effect. But whether that judgment is to stand inviolate upon the traditional theory of res judicata or upon the theory of collateral estoppel is speculative. This is so because the method used by the city for attacking the quiet title judgment has created a somewhat hybrid situation. Although the condemnation action is obviously a "second action" when viewed against the 1959 action to quiet title (which would lead us to believe that collateral estoppel is the appropriate theory), the city's motion for summary judgment is based upon fact issues (or the lack thereof) which are totally unrelated to the condemnation action and are related only to a quiet title action—in short, a blunt attack upon, and an attempt to relitigate, the 1959 quiet title action

(which would lead us to believe that res judicata is the appropriate theory). Under either theory the 1959 judgment must be respected.

The city has alternatively urged that the 1959 judgment is "void on its face," and therefore open to collateral attack, on the ground that the Superior Court "lacked jurisdiction" to enter the judgment. The reasoning offered in support of this contention is that A.R.S. § 18–201 et seq., furnished the exclusive method for a County Board of Supervisors to "abandon" county roadways, that they could not "abandon" the 33-foot strip simply by failing to oppose Read's 1959 action to quiet title. The answer to this argument is that in the 1959 quiet title action, the county did not "abandon" the roadway—it merely did not attempt to defend its interests in the roadway as against the challenge raised by Read's lawsuit. Because the Superior Court has jurisdiction over the parties and the subject matter, the judgment quieting title in Read is not subject to collateral attack.

■ We must also consider Read's contention raised in an "Objection to the Form of [the Summary] Judgment," that she has suffered injury because the city "abandoned the condemnation proceedings in bad faith" by its motion for summary judgment. We need only quote from the case which she herself has cited, to reject this contention. In Whitestone v. South Tucson, 2 Ariz.App. 494, at 496, 410 P.2d 116 at 118 (1966), it was stated that "[h]ere we have no indication of unnecessary delay in the prosecution of this action, nor do we find in the record such clear evidence of 'bad faith' that we would be justified in holding as a matter of law that the [city] was guilty of lack of good faith in either instituting or abandoning this action." In the instant case, we would not be justified in concluding that the filing of the motion for summary judgment was an "abandonment" of the condemnation action, because under the Arizona Rules of Civil Procedure, a litigant unquestionably

has the right to move for summary judgment if he desires, and regardless of whether or not he may prevail on that motion. We therefore decline to award Read damages on this claim.

Read's brief further claims error based on denial of a request to require the city to amend its pleadings to put title to the 33-foot strip in issue in the condemnation case. We find nothing in the record regarding such a request, and therefore this is not in issue here.

Reversed with directions to vacate the order granting summary judgment in favor of the City of Scottsdale and for proceedings to determine the issue of just compensation.

STRUCKMEYER, C. J., and CAMERON, J., concur.