176 P.3d 53

**STATE of Arizona, Defendant–Appellant/ Cross–Appellee,**

v.

**CITY OF KINGMAN, a municipal corporation, Defendant–Appellee Cross–Appellant,**

**Maria A. Minjares and Molly Minjares, Guardian ad Litem for Maria A. Minjares, Plaintiffs–Intervenors/Cross–Appellees.**

**No. 1 CA–CV 06–0797.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 14, 2008.

---

Terry Goddard, Attorney General, By Fred M. Zeder, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellant/Cross–Appellee.

Jones, Skelton & Hochuli, P.L.C., By Kevin D. Neal, Lori L. Voepel, Phoenix, Attorneys for Defendant–Appellee/Cross–Appellant.

Broening Oberg Woods & Wilson P.C., By Donald Wilson, Jr., Phoenix, Attorney for Molly Minjares Guardian ad Litem.

Terry H. Pillinger, P.C., By Terry H. Pillinger, Richard A. Cruz, Phoenix, Attorneys for Plaintiff–Intervenor.

## OPINION

SNOW, Judge.

¶ 1 The State appeals the trial court's entry of judgment as a matter of law in favor of

the City of Kingman ("City"). For the following reasons, we affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 This is a personal injury case arising from a motorcycle accident in which the plaintiff (intervenor on appeal), Maria Minjares, was injured at the intersection of Stockton Hill Road and Beverly Avenue ("intersection") in Kingman, Arizona. Minjares collided with a trailer pulled by Ronald Hunter.[1] Minjares' complaint alleged that the State and the City were responsible for the intersection and that they were negligent in the operation and maintenance of the intersection.

¶ 3 The City alleged that it had no duty to Minjares because the intersection is wholly controlled and maintained by the State through the Arizona Department of Transportation ("ADOT"). Minjares and the State argued that the City participated in a "joint effort" to improve the intersection; thus the City exercised control over the intersection and assumed a duty to Minjares. The trial court denied the City's motion for summary judgment.

¶ 4 Minjares' evidence on the issue of control, presented at trial, included the testimony of ADOT employee Rick Kirkevold, former Kingman Community Development Director Dennis Roberts, and ADOT engineer and team leader Robert La Jeunesse, as well as engineering consultant Harry Krueper. The State had the opportunity to examine these witnesses and elicit testimony regarding the City's alleged control of the intersection. In granting judgment as a matter of law in favor of the City after the presentation of the plaintiff's evidence, the trial court observed that the City "expressed its opposition [to ADOT's proposals for the intersection] ... however, [this] does not rise to the level of the exercise of control." The jury subsequently returned a verdict in favor of Minjares and a judgment against the State in the amount of $1,023,000.00.

¶ 5 The State timely appealed the judgment as a matter of law in favor of the City of Kingman. The City cross-appealed on the verdict and Minjares moved to intervene.[2] We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S") section 12–2101(B) (2003).

## DISCUSSION

¶ 6 The State raises two arguments on appeal. First, it contends that the trial court erred in granting judgment as a matter of law in favor of the City because the City and the State were involved in a "joint effort" to improve the intersection and thus the City exercised actual control over the roadway. Second, the State argues that the trial court abused its discretion when it excluded the evidence of a subsequent remedial measure offered to show the City's control over the intersection.

¶ 7 We review the trial court's grant of a judgment as a matter of law *de novo*, and view the evidence in the light most favorable to the party opposing the motion. *Shuck v. Texaco Ref. & Marketing, Inc.*, 178 Ariz. 295, 297, 872 P.2d 1247, 1249 (App.1994). As with summary judgment, a judgment as a matter of law is appropriate when there is no issue of fact. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). "Either motion should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Id.* We thus accept as true all the competent evidence introduced by the State and the reasonable inferences drawn from that evi-

---

1. Minjares settled with Hunter. She also sued Mohave County; the trial court dismissed the county because the county had no control or jurisdiction over the intersection.

2. The City raises several evidentiary issues of its own in its cross-appeal. Because we affirm the trial court's judgment as a matter of law, however, it is unnecessary to reach the issues presented by the City as they will not recur. *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 43, 945 P.2d 317, 354 (App.1996) (reaching only evidentiary issues related to claims being remanded for retrial because they were likely to recur).

dence. *Little v. All Phoenix S. Cmty. Mental Health Ctr., Inc.,* 186 Ariz. 97, 100, 919 P.2d 1368, 1371 (App.1996).

¶ 8 The specific issue we address is whether the State presented sufficient evidence on which a jury could reasonably find that the City exercised control over the intersection and thus could be held liable to Minjares.

¶ 9 Section 28–332(A) (2004) vests "[t]he exclusive control and jurisdiction over state highways, [and] state routes ... in the department of transportation." The parties do not dispute that the intersection at issue here, which is just north of an exit from Interstate 40, is wholly within the State's control and jurisdiction pursuant to the statute. However, the State may share the duty to keep the roadway safe by entering an intergovernmental agreement ("IGA") with a city. *See* A.R.S. ¶ 28–401(B) (Supp.2007).[3] Or, when a city exercises actual control over the roadway, it may assume joint liability for a failure to keep a roadway safe even absent the existence of an IGA. *Sanchez ex rel. Gordon v. City of Tucson,* 191 Ariz. 128, 131–33, ¶¶ 15–22, 953 P.2d 168, 171–73 (1998).

¶ 10 In *Sanchez,* the plaintiff was injured while crossing a street maintained by the state. *Id.* at 129, § 2, 953 P.2d at 169. The plaintiff sued the driver of the vehicle, the City of Tucson and the State. *Id.* at § 3. The plaintiff sued Tucson and the state based on the absence of a traffic light at the intersection and her argument that both entities had a duty to place a light there. *Id.* Tucson moved for, and was granted, summary judgment under the theory that it had no duty to the plaintiff because the roadway was under the state's control. *Id.* at ¶¶ 4–5, 953 P.2d 168. The Arizona Supreme Court reversed, finding that *"if the City exercised control over the roadway in question,* it would owe a duty to plaintiff to keep it in a reasonably safe condition." *Id.* at 130, § 10, 953 P.2d at 170 (emphasis added).

¶ 11 The court further held that there were issues of fact as to whether the City exercised actual control over the intersection at issue. It noted for example that prior to the accident the State had approved a request by Tucson to install a traffic light at the intersection in question. *Id.* at 131, § 14, 953 P.2d at 171. That plan had subsequently been abandoned, but there was no evidence in the record suggesting that the state's authorization for Tucson to install a traffic light at the intersection had lapsed. *See id.* Further, the plaintiff established that there was an IGA between the city and the state governing the maintenance and operation of street lighting and traffic lights on specified intersections of state routes within the city. *Id.* at ¶¶ 15–16, 953 P.2d 168. Although the intersection at issue was not explicitly contained in the IGA, the IGA arguably contemplated that traffic lights would be placed at additional intersections upon Tucson's input in determining the need for additional lights. *See id.* at § 16. The plaintiff further pointed to city of Tucson memoranda suggesting that it viewed the control of traffic at the location of the accident to be a joint problem shared by it and the state, and to a joint traffic study conducted by Tucson and the state designed to alleviate these problems. *Id.* at § 13.

¶ 12 The court concluded that under such facts, "[e]ven if a jury finds that the City had no right to exercise control under the IGA, it could alternatively find that the City in fact exercised control over the roadway and assumed a duty to the public to keep the roadway in a reasonably safe condition." *Id.* at 132–33, § 22, 953 P.2d at 172–73. The supreme court thus vacated the summary judgment and remanded for further proceedings, holding that "a governmental entity *which exercises control over a roadway,* even though it has no statutory or express contractual right of or duty to control the roadway may, in appropriate circumstances, be held liable for negligence in the exercise of that control." *Id.* at 134, § 28, 953 P.2d at 174 (emphasis added).

¶ 13 Here, however, there is no evidence that ADOT ever authorized the City to exercise any authority to design or make any

---

**3.** We cite the current versions of the applicable statutes throughout this opinion because no material revisions have since occurred.

improvements with respect to the intersection at issue, or that the City ever did so. Nor is there any evidence that an IGA existed between the City and ADOT pertaining to the operation of any part of state route that fell within the City. In fact, all of the facts set forth by the State tend to show that the City recognized and accepted ADOT's control over the intersection prior to the accident at issue. That the City may have attempted to influence ADOT's decision on how to design and operate the intersection does not amount to control over the intersection sufficient to give rise to liability pursuant to *Sanchez* for the reasons set forth below.

¶ 14 The State relies on several meetings at which ADOT and its engineers and consultants discussed with City representatives the best solutions for the traffic problems at the intersection to argue that the City exercised control over the intersection. At trial the ADOT witnesses testified that City representatives objected to some design solutions offered by ADOT at these meetings because those proposals restricted turns into a hospital and other local businesses.

¶ 15 However, the same statute that vests exclusive control over state highways in the department of transportation requires ADOT to "[d]o multi-modal state transportation planning, cooperate and coordinate transportation planning with local governments and establish an annually updated priority program of capital improvements for all transportation modes." A.R.S. § 28–332(B)(2). In interpreting the statute so as to give each section meaning as we are obliged to do, *see Speros v. Yu*, 207 Ariz. 153, 157, § 16, 83 P.3d 1094, 1098 (App.2004), it is clear that ADOT does not surrender "exclusive control and jurisdiction over state highways" merely because it "cooperate[s] and coordinate[s] transportation planning with local governments." *See* A.R.S. § 28–332(A), (B)(2).

¶ 16 The relevant distinction as set forth by *Sanchez* is not whether ADOT coordinates its transportation planning with local governments, but whether, with respect to the location of the accident at issue, there are facts that suggest the local government assumed control either over the process of design, or of the actual operation or maintenance of the location. When, as in *Sanchez*, facts demonstrate that ADOT may have actually ceded control of aspects of the design, operation or maintenance to the city and the city accepted such responsibility through an intergovernmental agreement or otherwise, then sufficient facts are established to raise an issue whether a local government entity assumed control over an intersection. In the absence of such facts, however, the law that grants exclusive control of state highways to ADOT governs.

¶ 17 Here, the mere expression of concern by City representatives about a design solution offered by ADOT cannot, as a matter of law, prevent ADOT from implementing the solution it deems fit with respect to an intersection over which it has exclusive control. ADOT or others cannot create liability for a city merely because the city participates in discussions regarding an improvement to a state roadway.

¶ 18 The State further asserts, however, that ADOT has a policy of obtaining local government approval prior to making improvements to its roadways within city limits.[4] ADOT argues that, due to this policy, the City had control over the design of the intersection and effectively vetoed ADOT's plans when the Kingman City Council voted against a proposal set forth by ADOT. There are several flaws with this argument.

¶ 19 The first is that while ADOT may promulgate policies supplementing legislation to ensure the complete operation and enforcement of a state statute, it "may not enact rules or regulations [or policies] that conflict with a statute." *Ariz. Dep't of Econ. Sec. v. Leonardo*, 200 Ariz. 74, 79, § 16, 22 P.3d 513, 518 (App.2001); *see also Brink Elec. Constr. Co. v. Ariz. Dep't of Revenue*, 184 Ariz. 354, 359 n. 5, 909 P.2d 421, 426 n. 5

---

4. The State did not offer in evidence an actual text of the policy itself, merely a description of how it contends that ADOT operates.

(App.1995) ("a regulation may not contradict a statute"). In A.R.S. § 28–332(A) the Legislature mandates that ADOT have exclusive control over state highways. ADOT cannot frustrate that statute by implementing a policy that gives cities veto power over ADOT's design decisions for those portions of state highways that fall within city limits. Pursuant to our statute ADOT may enter intergovernmental agreements that share such control, *see* A.R.S. § 28–401(B) (stating that the director of ADOT "shall enter into agreements on behalf of this state with political subdivisions ... for the improvement or maintenance of state routes or for the joint improvement or maintenance of state routes"), but ADOT cannot create such shared control by its own unilateral policy. While ADOT is obligated by statute to "cooperate and coordinate transportation planning with local governments," A.R.S. § 28–332(B)(2), nothing in that statute allows ADOT to abandon control of its right of way within the jurisdictions of local governments by giving such governments veto authority over ADOT decisions. Thus, to the extent that ADOT argues that it ceded control to the City of Kingman in this case through the promulgation of its own policy, the argument is unavailing to impose on the City liability for the design or operation of the intersection.

¶ 20 Second, while the record does demonstrate that ADOT presented its design proposal at a City Council meeting, and that the Council heard the proposal, it only reflects that the City asked ADOT to consider an alternative proposal as well. The record does not reflect that the City rejected, or assumed that it had the power to reject, an ADOT proposal. Nowhere in this record is there a vote by the City Council regarding ADOT's proposal, although the record does, however, contain a motion by the City Council to "ask" ADOT to improve signage at the intersection and to construct a right turn lane. That the City asked ADOT to consider the alternative does not create a question of fact whether the City exercised control over the intersection. The City did not and could not direct or compel ADOT to place additional signage. Nor did it, prior to the accident, ask and obtain permission from ADOT to itself undertake remedies with respect to the intersection as the City of Tucson did in *Sanchez*. The City merely requested that ADOT consider alternatives. That ADOT implemented the requested changes does not give rise to an inference that the City assumed any control over the intersection. Rather, it suggests to the contrary.

¶ 21 The State also relies on "the Kingman Area Transportation Study" prepared for the City, County and ADOT by BRW Inc., to assert that the City controlled the intersection. The area-wide transportation study, however, analyzed more than just the intersection at issue. The study addressed transportation for the entire Kingman area, including other transportation methods such as public transit, and bicycle and pedestrian systems. Such a broad examination of transportation issues in the entire Kingman area prepared for city, county and state governments fails to raise an issue of fact whether the City exercised actual control over the specific intersection involved here.

¶ 22 In short, before a city can be held liable for actual control of an intersection that is part of the state highway system absent an IGA, the city must assume responsibility for the planning or design of the intersection, or it must actually participate in maintaining or operating it. None of the evidence submitted at trial here, considered separately or cumulatively, suggests that the City did so.

¶ 23 The additional evidence offered by the State, but not admitted by the trial court on this point, does not change our analysis. Two years after the accident at issue, the City and ADOT entered an IGA with respect to the intersection. In that process, the City received authorization and permits from the State prior to constructing directional islands at the intersection. Because the remedial measure was undertaken jointly, two years after the accident, it has no bearing on the issue of control by the City at

the time of the accident. Thus, even if the court had considered the evidence of the subsequent remedial measure, it does not suggest that the City had control of the intersection at the time of the accident. We thus affirm the trial court's judgment as a matter of law dismissing the City from the suit after the presentation of the plaintiff's case.

## CONCLUSION

¶ 24 For the foregoing reasons, we affirm the judgment of the trial court.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, PHILIP HALL, Judge.