NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CHRISTOPHER MOORE, *Plaintiff/Appellee*,

*v.*

CITY OF COTTONWOOD, *et al.*, *Defendant/Appellant*,

and

YAVAPAI COUNTY, *et al.*, *Defendant/Appellee*.

No. 1 CA-CV 25-0006
FILED 01-27-2026

---

Appeal from the Superior Court in Maricopa County
No. CV2022-008970
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

---

COUNSEL

Wieneke Law Group, PLC, Tempe
By Kathleen L. Wieneke, Tara Zoellner, Suzanne Reed
*Counsel for Appellees Yavapai County, Yavapai County Flood Control District*

Breyer Law Offices, PC, Phoenix
By Mark P. Breyer, Edward M. Ladley
*Co-Counsel for Appellee Christopher Moore*

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Co-Counsel for Appellee Christopher Moore*

Doyle Hernandez Millam, Phoenix
By William H. Doyle, Carlos A. Hernandez, Brandon D. Millam
*Counsel for Appellants*

---

**MEMORANDUM DECISION**

Vice Chief Judge David D. Weinzweig delivered the decision of the Court, in which Judge Cynthia J. Bailey joined. Presiding Judge Jennifer M. Perkins specially concurring.

---

**W E I N Z W E I G**, Vice Chief Judge:

**¶1** The City of Cottonwood ("City") appeals the superior court's entry of summary judgment in favor of Yavapai County ("County"). For the reasons below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

*Faith Moore*

**¶2** The skies above Yavapai County opened on July 24, 2021, dumping two inches of rain in only hours. Sixteen-year-old Faith Moore braved the deluge that evening to visit a friend. She took State Route 279 ("SR 279"), which meant she would cross the Christina Draw wash—but the wash had flooded. Moore tried to cross. Her car got stuck and she was trapped inside. When she opened the door to escape, the rushing water swept her away and she drowned.

*State Route 279*

**¶3** SR 279 was created in 1899, when the Yavapai County Board of Supervisors declared it a public highway. The County controlled and maintained the roadway until 1955, when it was adopted by the State Highway System. Nine years later, in 1964, the State abandoned the stretch of SR 279 where the tragedy occurred, so it reverted to the County, which took control and maintained the road.

**¶4** The City entered the mix in 1999 when it annexed 3,200 acres of unincorporated Yavapai County land. Among the land it annexed was the stretch of SR 279 that intersects the Christina Draw wash. The City exercised control over this stretch of SR 279. It posted signs. It painted lane markers. It counted traffic. It also identified SR 279 as a "city street" in

2

maintenance contracts from 2002 through 2021, and boasted about that relationship in public documents like the Verde Valley Master Transportation Plan. With the City in control, the County no longer maintained the relevant stretch of SR 279.

*Lawsuit and Summary Judgment*

**¶5**        Moore's father sued the City and County for wrongful death. He alleged they improperly designed and maintained SR 279, stressing that signs had not been planted to warn drivers of the flood risk. The City and County disagreed over who was responsible. The City said only the County had a duty because the County controlled the relevant stretch of SR 279. The County insisted only the City had a duty because the City controlled the relevant stretch of SR 279.

**¶6**        The parties filed dueling motions on who had a duty, so the superior court had to determine who controlled SR 279. The court agreed with the County, finding it exercised no control "over the roadway and had no duty to make the road safe for travel," while the City "assumed all responsibility for maintenance of the roadway." The court granted summary judgment to the County and dismissed the lawsuit against it. The City timely appealed.

## JURISDICTION

**¶7**        We must first determine whether we have jurisdiction. *Bridgeman v. Certa*, 251 Ariz. 471, 473, ¶ 5 (App. 2021). The legislature limits and defines our jurisdiction. *Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 426, ¶ 4 (App. 2016). We have jurisdiction to review final judgments entered in the superior court, A.R.S. § 12-2101(A)(1), but not pretrial rulings such as a denial of summary judgment, *Sonoran Desert Investigations, Inc. v. Miller*, 213 Ariz. 274, 276, ¶ 2 (App. 2006). For that reason, we lack jurisdiction to consider the superior court's denial of the City's motion for summary judgment, including the statutory immunity arguments. *Id.*; *see also* Ariz. R.P. Spec. Act. 12(c)(1).

**¶8**        Because the superior court entered a final judgment, however, we do have jurisdiction over the superior court's entry of summary judgment in favor of the County. A.R.S. § 12-2101(A)(1); *see* Ariz. R. Civ. P. 54(b).

**DISCUSSION**

**¶9** We review the entry of summary judgment de novo, viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). A moving party is entitled to summary judgment "if the facts produced in support of the [nonmovant's] claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

**¶10** When Arizona state and local governments control a roadway, they possess a duty to keep that roadway reasonably safe for travel. *E.g.*, *Sanchez v. City of Tucson*, 191 Ariz. 128, 130, ¶ 10 (1998). Arizona law recognizes two forms of government control over roadways—the legal right to control and the actual exercise of control. *See id.* at 131, 132–33, ¶¶ 10, 22. Arizona statutes convey the legal right to control, along with intergovernmental agreements that expressly grant control to a government. *See* A.R.S. §§ 28-332(A), 11-251(4), 9-276(A)(22); *State v. City of Kingman*, 217 Ariz. 485, 488, ¶ 9 (App. 2008) ("[T]he State may share the duty to keep the roadway safe by entering an intergovernmental agreement [] with a city.").

**¶11** If no statutes or intergovernmental agreements grant legal control, Arizona courts examine whether a government exercised actual "control" over the roadway, which includes "the process of design, or of the actual operation or maintenance of the location." *City of Kingman*, 217 Ariz. at 489, ¶ 16; *Sanchez*, 191 Ariz. at 134, ¶ 28 ("[A] governmental entity which exercises control over a roadway, even though it has no statutory or express contractual right of or duty to control the roadway may, in appropriate circumstances, be held liable for negligence in the exercise of that control.").

I.     **The City Had the Legal Right to Control the Roadway and Exercised Actual Control.**

**¶12** The City contends it lacked a legal right to control the relevant stretch of SR 279. We review that issue de novo. *Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 81, ¶ 4 (2022) (we review de novo whether a duty exists).

¶13        The City possessed the legal right to control the relevant stretch of SR 279 because it annexed that land in 1999.  Annexation occurs when a city or town extends its corporate limits.  A.R.S. § 9-471(A).  When annexation occurs, "title and jurisdiction of the streets within the annexed area vest in the [annexing municipality]."  *Read v. City of Scottsdale*, 107 Ariz. 524, 525 (1971); *see also* A.R.S. § 9-276(A)(22) (cities have power to establish, alter and regulate their streets).  When the City annexed the relevant stretch of SR 279, it succeeded to the County's interest in SR 279's title and jurisdiction.

¶14        The City argues it only annexed the area surrounding SR 279, not the roadway itself because the official annexation documents did not identify which government entity would be responsible for maintenance as required by A.R.S. § 9-471(A).  But that requirement was added to § 9-471(A) in 2017, almost two decades after the City's annexation.  *Compare* A.R.S. §§ 9-471(A)(1) (1999) *with* 9-471 (2017).  When the City annexed the relevant stretch of SR 279, the statute only required municipalities to file an annexation map with the county recorder that included the roadway.  A.R.S. § 9-471(A)(1) (1999).  Because the City's annexation map included the relevant stretch of SR 279, it assumed control over that roadway.  *See Read*, 107 Ariz. at 525.

¶15        The City also argues the superior court committed reversible error because it never determined who owned SR 279, but the court impliedly found what Read teaches: the City secured ownership when it annexed the relevant stretch of road.  *See id.*

## II.    The County Did Not Exercise Control Over the Roadway.

¶16        The City contends the County should not have been dismissed from the lawsuit because it still had a duty based on the exercise of actual control.  *See Sanchez*, 191 Ariz. at 132–33, ¶ 22.  Arizona courts find that a government exercises actual control over a roadway when it performs maintenance and improvements—such as grading surfaces, making structural repairs, repaving, or installing traffic signs and lights.  *McDonald v. City of Prescott*, 197 Ariz. 566, 568, ¶ 12 (App. 2000); *Sanchez*, 191 Ariz. at 131, 132–33, ¶¶ 16, 22.  By contrast, police activities like patrolling the highway are not control.  *McDonald*, 197 Ariz. at 568, ¶ 12.

¶17        The City relies on two facts to show the County controlled the relevant stretch of SR 279.  First, the County participated in a traffic study at another spot along SR 279 in 2020.  That is not control because the study did not concern the Christina Draw wash.  The relevant test is whether the

entity "assumed control either over the process of design, or of the actual operation or maintenance *of the location*." *City of Kingman*, 217 Ariz. at 489, ¶ 16 (emphasis added).

**¶18** Second, the City points to the County's placement of signs along SR 279. But those signs harm the City's cause. They inform travelers they are leaving a Yavapai County Maintenance area, announcing "YCM END" or Yavapai County Maintenance Ends. A mile down the road, past Christina Draw wash, the sign announces "YCM BEG" or Yavapai County Maintenance Begins. The only signs at the intersection of SR 279 and Christina Draw wash were erected by the City.

**¶19** On top of that, the City exercised actual control over the road. Actual control is a question of fact, unlike the issue of duty generally, but when the material facts are uncontested, summary judgment is appropriate. *Sanchez*, 191 Ariz. at 130, ¶ 10; *Orme Sch.*, 166 Ariz. at 309. The City performed maintenance by striping the road, collecting traffic data and claiming control in official documents and contracts. The City also posted a no dumping sign along with a flood gauge at the intersection of Christina Draw wash and SR 279.

**¶20** The superior court properly granted summary judgment to the County because no reasonable jury could find that the County controlled the relevant stretch of SR 279.

**CONCLUSION**

**¶21** We affirm.

**P E R K I N S,** Judge, specially concurring:

¶22      I agree with the decision and write separately only to clarify a narrow point we do not reach. Arizona cases in this space hinge on control rather than ownership. But not because Arizona courts have rejected ownership as relevant; rather, no case identified by the parties has squarely addressed a situation involving contested ownership in this context. *See, e.g., Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267, ¶ 9 (2021) (discussing a multi-tenant commercial building premises liability claim); *Beach v. City of Phoenix*, 136 Ariz. 601, 602–03 (1983) (deciding what duties a municipality owes to pedestrians on its roads); *Wiggs v. City of Phoenix*, 198 Ariz. 367, 368, ¶¶ 1–3 (2000) (deciding whether our comparative fault statute preserves vicarious liability for an independent contractor's negligence on a roadway).

¶23      As noted above, the superior court only impliedly reached a conclusion on ownership, an issue that the City and County disputed. *Supra* ¶ 15. We conclude the annexation resolved the ownership question here. But, in my view, if a case presented a genuine dispute of material fact on ownership, a jury should resolve that issue notwithstanding clarity on the issue of control. Put another way, if ownership is disputed and a jury could reasonably conclude that an entity owned a road at the center of a liability dispute, then the jury should decide the question of ownership regardless of whether there is also a genuine dispute as to control. Our cases have left open the question of liability for an owner who does not exercise control, and we do not suggest otherwise here.

