607 P.2d 975

**Una JACKSON and Floyd Jackson, husband and wife, Appellants,**

v.

**CARTWRIGHT SCHOOL DISTRICT and Cartwright Little League, Inc., an Arizona Corporation, Appellees.**

**No. 1 CA–CIV 4139.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 8, 1980.

Rehearing Denied Feb. 22, 1980.

Review Denied March 11, 1980.

Friedman & Foster, P. C., by Steven M. Friedman, Phoenix, for appellants.

Snell & Wilmer by Douglas W. Seitz, Phoenix, for appellee Cartwright Little League, Inc.

Robbins, Green, O'Grady & Abbuhl by Harriet C. Babbitt, Phoenix, for appellee Cartwright School Dist.

OPINION

MELVYN T. SHELLEY, Judge.

On June 28, 1976, appellant Una Jackson slipped and fell on a ramp by the southeast gate of the Cartwright Elementary School as she was leaving the school grounds after a Cartwright Little League game in which her son had played. She was injured as a result of the fall. She and her husband had used the ramp to go to and from twelve previous games prior to the fall. They had discussed the slipperiness of the ramp in question on prior occasions and they complained about it to Anthony Mussi, Safety Director for the Little League. The Jacksons never complained to anyone from the Cartwright School District. No complaints were made to the School District by anyone about the ramp prior to the fall, nor had any previous accidents, if any, been called to the attention of the School District or the Little League. No one had noticed any dust and/or gravel on the ramp prior to June 28, 1976.

The ramp was clear of dust and gravel when the Jacksons went to the game. During the game on the day of the accident there was an unusual amount of vehicular activity in the alley which caused dust and some gravel to settle on the ramp. The spectators were aware of the dust and some of it settled on the seats at the field during the game. As the Jacksons were leaving the game, Mr. Jackson walked ahead of Mrs. Jackson a few feet. He noticed dust on the ramp and saw foot prints of people who had preceded him on the ramp. Mrs. Jackson did not see the dust and/or gravel on the ramp before she fell.

The Cartwright School District grounds cover about twenty acres, which has, among other things, a playground with swings, slides, rubber tires, etc.; a playground with equipment for smaller children to climb on; a combination baseball and volleyball court, two soccer fields and four baseball diamonds. The premises are completely enclosed by a chain link fence with at least eight gates. Three gates, including the gate in question, were locked open by the School District on June 28, 1976. The ramp on which the accident occurred was located completely outside the fence which surrounds the property.

The Little League used the baseball field near the southeast corner of the premises on the night of the accident. This usage was pursuant to a "use of facility" request filed for the entire season and approved by the School District. Alteration of the premises had to be requested in writing by the Little League to the School District for either approval or disapproval.

The playground was open for use by the general public before, during, and after Little League games and at other times. All people using the playground had access to the same ramp and gates. There were two other gates locked open and available for use on the day in question. The Jacksons chose, as they had done for the previous games, not to use either of the other two gates because those gates were not as convenient distance-wise as the gate by the ramp.

Appellants filed suit. The appellees each filed motions for summary judgment. Both motions were granted and judgments were entered thereon. This appeal was duly filed.

The appeal presents the following questions:

1. Does the fact that the condition of the ramp was open and obvious preclude liability as a matter of law?

2. Was there a question of fact as to whether or not the ramp was unreasonably dangerous?

3. Was the ramp in violation of the code of the City of Phoenix?

4. Did the Little League have possession and/or control of the ramp so that it owed a duty to the appellants?

The court will deal with the first two questions as one unit. Appellants cite Restatement (Second) of Torts, §§ 343 and 343(A)(1), as follows:

§ 343. Dangerous Conditions Known to or Discoverable by Possessor

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

\*     \*     \*     \*     \*     \*

§ 343A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Appellants admit that the ramp was open and obvious, but they question whether or not the dangerousness of the ramp was so obvious that the appellant should have realized its dangerousness as it applied to her. In other words, does the evidence show that appellant Una Jackson appreciated the danger that was involved?

Appellant Una Jackson testified in her deposition that on the night of the accident the ramp did not appear to be in any different condition than it had been on the previous occasions.

Appellant Floyd Jackson testified that he and his wife had discussed the possible danger of the ramp on previous occasions. He stated:

A. . . . I have slipped going in and out, yes, sir.

Q. On the same night?

A. Yes, sir, and other times, too.

Q. Did you tell your wife that had happened?

A. Yes.

Q. What was her reaction?

A. "Be careful it's a dangerous place." I told her to do the same thing.

It clearly appears that the risk was apparent to her. The appellants not only recognized the dangerousness of the ramp, but they had discussed it with Anthony Mussi, the Little League Safety Director. The requirements for liability set forth in the Restatement (Second) of Torts are not present. The undisputed facts show that appellants knew of the condition and felt it involved an unreasonable risk of harm to them.

■   Appellants, in spite of their knowledge, continued to use the ramp, and the injury did not occur until the thirteenth Little League game. Other spectators at the Little League games and other users of the playgrounds had used that ramp and gate for ingress and egress without injury. The ramp was not unreasonably dangerous. In addition, there were two other exits open and available for appellants use, although they were more circuitous.

Cases cited by appellants are distinguishable. Appellants cite the case of *Glowacki v. A. J. Bayless Markets*, 76 Ariz. 295, 263 P.2d 799 (1953). In that case the plaintiff slipped on a puddle of water in the defendant's store. In reversing the judgment for the defendant *non obstante veredicto*, the Arizona Supreme Court said there was evidence that the plaintiff did not know there was water on the floor prior to her fall. A question of fact existed for the jury because she therefore "cannot be charged with knowledge of the dangerous character of the condition, unless she had a duty to know of the condition, and knowing it, would as a reasonable person have realized the dangers inherent therein." In this case appellants knew from their prior usage that the ramp was there, and felt that it was dangerous.

In *Murphy v. El Dorado Bowl, Inc.*, 2 Ariz.App. 341, 409 P.2d 57 (1965), the court held that a "drop off" was quite likely to be forgotten in the pressure of the bowling game and, in fact, the plaintiff did forget about the drop off at the time of the incident. Here there were no pressures which would cause the ramp to be forgotten. There is no indication at all that appellant

Una Jackson forgot the condition of the ramp at any time.

The ramp had been used for a long time without any report of prior injuries. Appellants had used the ramp repeatedly before the fall. It was not in a state that the possessor should anticipate any harm.

There is nothing in the record to show the fall would not have occurred without the dust and gravel which accumulated some time prior to the fall but after the game started.

Una Jackson states in her deposition:

Q. How much gravel would you estimate was on the slope?

A. Well, I really don't know.

Q. *Was it more than one or two pebbles that your foot slipped on?*

A. Yes, it was more than that.

Q. Did you examine the slope after you fell?

A. I couldn't. I was taken to the hospital.

Q. How do you know there was any gravel on it?

A. Well, because my arm was full of it when they operated.

 \*   \*   \*   \*   \*   \*

Q. Do you know why your husband felt there was gravel on the slope at the time you fell?

A. *Because I think he went to check to see what caused me to fall.*

Q. Do you think or did he? Do you know if he went to check?

A. Yes, I'm almost positive he did after I fell. They got me out of the way of the gate, *and he went back to see what would be there to cause me to fall, because I had been up and down before, and I hadn't fell.* (Emphasis added.)

Floyd Jackson stated in his deposition as follows:

Q. When you walked down the ramp to take the chairs to the car after the game did you notice anything different about the ramp?

A. Yes, ma'am.

Q. What was it that was different?

A. There was dust particles on it due to heavy traffic up and down the alley that night. We were told not to park on 59th Avenue. They were putting tickets on cars, City police. We were run away from there. So there is two blocks from 59th to where we were; and a lot of cars, as well as bicycles and motorcycles was going up and down the alley that night creating quite a dust.

Q. This is the alley on the south side of the field?

A. That is true.

Q. You say dust particles. Do you recall how big these particles were?

A. Sand and some a little larger.

Q. Did you actually notice this as you exited, or did you notice it only after your wife fell?

A. I noticed it before and after she fell.

In *McGuire v. Valley National Bank of Phoenix*, 94 Ariz. 50, 381 P.2d 588 (1963), our Supreme Court affirmed a directed verdict for the defendant because the plaintiff was unable to prove how long the pebble which caused him to slip and fall had been on the stairway of the defendant's building. The court stated:

The pebble could have been deposited ten seconds before the plaintiff fell, or ten minutes, or two hours and ten minutes. There is no evidence from which the jury could infer that one period of time was more reasonable than any other. Only if it had been there for a sufficient length of time for the defendant, in the exercise of reasonable care, to find and remove it, could the defendant be found negligent. Submission of these facts to the jury would require the jury to guess whether the pebble had been on the stairway for a sufficient length of time. This cannot be permitted.

 \*   \*   \*   \*   \*   \*

It is, of course, incumbent upon a plaintiff alleging negligence upon the part of a defendant to show affirmatively by evi-

dence sufficient to satisfy a reasonable mind that the negligence complained of actually existed. *It is not sufficient that the facts are such that it might have existed. It must appear affirmatively that it did. Butane Corp. v. Kirby*, 66 Ariz. 272, 282, 187 P.2d 325, 332 (1947) (emphasis in original.) 94 Ariz. 50, 53–54, 381 P.2d 588, 590.

There is no proof that the sand and gravel was on the ramp for a long enough period of time to constitute either actual or constructive notice to either of the appellees. There is no proof that sand and/or gravel had ever accumulated on the ramp prior to the date of the fall.

In *Walker v. Montgomery Ward & Co., Inc.*, 20 Ariz.App. 255, 258, 511 P.2d 699 (1973), we stated:

> There is, however, the general proposition that in order to impose liability on the proprietor for injuries sustained by an invitee, the plaintiff must prove either, 1) that the foreign substance or dangerous condition is the result of defendant's acts or the acts of his servants, or 2) that defendant had actual knowledge or notice of the existence of the foreign substance or dangerous condition, or 3) that the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action to remedy it. . . .

It is clear that the dust and gravel were not the result of the acts of either of the appellees. Provision (1) in *Walker* does not apply. As to provision (2), it is clear that the appellees did not have actual notice of the dust or gravel on the ramp. With regard to provision (3) in *Walker*, it is clear that the condition did not exist for such a length of time that in the exercise of ordinary care the proprietor should have known of it and therefore there was no duty to remedy the situation. There is no proof as to when the dust and gravel accumulated on the ramp, except it was not there when the appellants entered to see the game. The condition of the ramp was open and obvious and not unreasonably dangerous. Appellants were well aware of its condition.

Appellees had no prior notice of any accident on the ramp. There was no notice, either actual or constructive, as to the dust and gravel that accumulated on the ramp.

Appellants further contend that the ramp was built in violation of the code of the City of Phoenix. There is no evidence at all as to whether the ramp was built before or after the effective date of §§ 900 through 906 of the Phoenix City Building Code. Also, there is a failure to show proximate cause between the ramp's steepness and the accident. Therefore, it is not necessary to discuss the School District's liability under the code. Even if the code did apply, it would not affect liability as to the Little League.

■ The fourth question urged by appellants is:

> Did the Little League have possession and/or control of the ramp so that it owed a duty to the appellants?

The question must be answered in the negative as the playground gates were locked open by the School District on the day of the fall. The Cartwright Little League could only request an alteration of the premises in writing, subject to approval or disapproval of the School District. The playgrounds were open for use by the general public even during the time when the Little League games were on. The case of *Kiser v. A. J. Bayless Markets, Inc.*, 9 Ariz. App. 103, 449 P.2d 637 (1969) is in point. Bayless Markets leased a building to conduct a grocery business. A parking lot adjoined the building leased by Bayless. Plaintiff was walking across the parking lot in the vicinity of the premises leased by defendant. She fell in a sunken portion of the parking lot and was injured. Defendant Bayless moved for summary judgment on the ground that it had no control over the parking lot. The affidavit in support of the motion showed that they had leased only the building. The lease required the lessor to keep and maintain the parking area planned for such shopping center in a good state of repair. Motion for summary judgment was granted. The court held that the parking lot was not part of the

premises leased by defendant and lessor had the responsibility to maintain the parking lot. Therefore, there was no duty owing by Bayless to plaintiff.

The Little League is in a situation similar to cases where a lessor leases a portion of his premises and the lessor retains control over a common area used by all lessees and their invitees.

It is well settled that the landlord is liable to third persons for injuries resulting from his negligence in the management of such portions of the premises as are retained under his control or for the common use of his tenants. In such cases, the lessee of an apartment or flat, office, or other portion of the building is not responsible at common law to others for the safety of common stairways, passageways, etc., which remain under the control of the landlord. 49 Am.Jur.2d Landlord and Tenant § 987.

The judgment of the trial court is affirmed.

FROEB, Acting P. J., and CONTRERAS, J., concurring.

NOTE: The Honorable MELVYN T. SHELLEY, Navajo County Superior Court Judge was authorized to participate by the Chief Justice of the Arizona Supreme Court, pursuant to A.R.S.Const. Art. VI, § 3.