IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**EPHRAIM DABUSH, ET AL.,**
*Plaintiffs/Appellants,*

*V.*

**SEACRET DIRECT LLC, ET AL.,**
*Defendants/Appellees.*

---

No. CV-19-0200-PR
Filed January 8, 2021

---

Appeal from the Superior Court in Maricopa County
The Honorable Randall H. Warner, Judge
No. CV2015-003804
**AFFIRMED**

Memorandum Decision of the
Court of Appeals, Division One
2019 WL 2651082
Filed June 27, 2019
**AFFIRMED IN PART, REVERSED IN PART**

---

COUNSEL:

Geoffrey M. Trachtenberg, (Argued) Justin Henry, (Argued) Levenbaum Trachtenberg PLC, Phoenix, Attorneys for Ephraim Dabush and Rachel Dabush

Jonathan D. Schneider, Luane Rosen, ReNae A. Nachman, Charles D. Onofry, (Argued) Schneider & Onofry PC, Yuma, Attorneys for Seacret Direct LLC

Ryan John McCarthy, Jonathan Paul Barnes, Jr., (Argued) Jones Skelton & Hochuli PLC, Phoenix, Attorneys for Prizma Capital LLC

JUSTICE GOULD authored the opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, BEENE, MONTGOMERY and JUDGE EPPICH[*] joined.

_____

JUSTICE GOULD, opinion of the Court:

¶1        This is a premises liability case.  Plaintiff Ephraim Dabush ("Dabush") was injured when he fell through a skylight on the roof of a multi-tenant commercial building.  Dabush asserts that Seacret Direct, LLC ("Direct") and Prizma Capital, LLC ("Prizma"), who sublet portions of the building at the time of the accident, were possessors of the roof, and therefore owed him a duty to maintain the roof in a safe condition.

¶2        We hold that because Prizma and Direct ("Defendants") did not have a right to control the roof under their subleases, and did not exercise actual control over the roof, they were not possessors, and therefore owed no duty to Dabush.  We further hold that Prizma did not become a possessor by making repairs to the roof.  And finally, we hold that Defendants did not assume a duty to protect Dabush from the risk of falling through a skylight.  Accordingly, we affirm the trial court's grant of summary judgment in favor of Defendants.

**I.**

¶3        At the time of Dabush's accident, 2619 E. Chambers, LLC ("Chambers") owned the building, which consists of office space and a warehouse.  Chambers leased the entire building to Seacret Spa, LLC ("Spa").  Under Spa's lease, it was responsible for collecting rents, making all necessary payments associated with the building, and repairing and maintaining the building.

¶4        Spa subleased portions of the building to Seacret Retail, Direct, and Prizma.  Prizma leased office space and a storage unit, while Direct leased office space and part of the warehouse.  Direct's section of the

---

[*]Chief Justice Robert M. Brutinel has recused himself from this case. Pursuant to article 6, section 3 of the Arizona Constitution, Judge Karl Eppich, Division Two, Arizona Court of Appeals was designated to sit in this matter.

warehouse was separated from Spa's section by a chain link fence. Chambers, Spa, Direct, and Prizma generally operate as interconnected family businesses. Dabush, however, does not allege they failed to operate as separate and distinct limited liability companies.[1]

¶5  At the time of the accident, Elad Gotlib ("Gotlib") managed the building for Spa. When maintenance issues arose in the building, Gotlib hired Prizma to perform the repairs. Prizma invoiced Spa for the cost of the repairs. However, according to Direct's manager, David Ben-Shabat ("David"), Direct was responsible for maintaining the roof over its section of the warehouse.

¶6  Dabush, who was a friend and relative of David, would often visit him at the building. According to Dabush, Prizma and Direct were expected to "pitch in" and make repairs to the building. As a result, Dabush would assist David by supervising Prizma's workers while they performed repairs. Additionally, David would relay instructions to Prizma's workers through Dabush.

¶7  Before Dabush's fall, Gotlib discovered the warehouse roof was leaking. He hired Prizma to fix the leaks, which ultimately required replacing the skylights. On the morning of the accident, Prizma's employees[2] started replacing Skylight 18. The parties dispute why Dabush went on the roof, but it was either to supervise Prizma's workers or, at David's request, to inspect and take pictures of their work. After Dabush examined and photographed Skylight 18, he walked to Skylight 10, which was approximately eighty feet from where Prizma's employees were working. When Dabush put his foot on top of Skylight 10, he fell through the skylight and was severely injured. The skylight where Dabush fell was located over Direct's portion of the warehouse.

¶8  The trial court granted Defendants' motions for summary judgment on the grounds that, because they were not the owners or possessors of the warehouse roof, they owed no duty to Dabush. The court of appeals affirmed as to Prizma, but reversed as to Direct, holding that a

---

[1] Dabush has settled his claims against Chambers and Spa.

[2] Dabush claims that Valentin Nevarez and Omar Unzueta were Prizma's employees, while Prizma claims they were independent contractors. Because this issue is not material to our resolution of this appeal, we assume that they were Prizma's employees.

genuine fact dispute existed as to whether Direct exercised control over the roof. We accepted review because this case involves an issue of statewide importance regarding premises liability.

## II.

**¶9** To prevail on his premises liability claim, Dabush must prove that Defendants owed him a duty to maintain the roof in a reasonably safe condition. *Quiroz v. ALCOA, Inc.*, 243 Ariz. 560, 563–64 ¶ 7, 574 ¶ 63 (2018). In Arizona, duty "is based on either special relationships recognized by the common law or relationships created by public policy." *Id.* at 563 ¶ 2. Here, Dabush claims that a special relationship existed because he was an invitee on Defendants' premises. *See id.* at 567 ¶ 23 (stating that a duty exists based on a landowner-invitee and landowner-licensee special relationship); *Nicoletti v. Westcor, Inc.*, 131 Ariz. 140, 143 (1982) (stating that a possessor of land owes a duty of care to entrants on their property); Restatement (Second) of Torts §§ 314A, 341–343A (Am. Law Inst. 1965) (to same effect).

**¶10** Whether a duty exists "is a legal matter to be determined *before* the case-specific facts are considered." *Gibson v. Kasey*, 214 Ariz. 141, 145 ¶ 21 (2007). Thus, "we review the existence of duty de novo as a matter of law." *Quiroz*, 243 Ariz. at 564 ¶ 7. Further, we review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom summary judgment was entered. *Duncan v. Scottsdale Med. Imaging, Ltd.*, 205 Ariz. 306, 308 ¶ 2 (2003).

## III.

**¶11** As we discuss below, Defendants only owe a duty to Dabush if they had legal control of the premises or exercised actual, physical control over it. Here, it is undisputed that Spa, under its lease with Chambers, had the legal right to control and possess the entire building, including the roof. Dabush argues, however, that because Defendants performed repairs on the roof, they exercised control over it, and were therefore possessors. In contrast, Defendants claim that as sublessees, they had no legal right to control the common areas of the building, which included the roof. Additionally, Defendants assert that any repairs they performed did not make them possessors of the roof.

## A. Legal Control
### 1. Direct

¶12        Direct's sublease expressly provides that Spa retains control over the "common areas" in the building. And here, although the sublease does not specifically list the roof as one of the common areas, it clearly is a common area. Specifically, in multi-tenant buildings, a common area is one that is used for, or benefits, all tenants. *See Warren v. Winkle*, 400 S.W. 3d 755, 759–60 (Ky. Ct. App. 2013) (stating that a common area is one "used by all tenants or necessary to their enjoyment of their individual apartments"); *Allison v. AEW Capital Mgmt.,* L.L.P., 751 N.W.2d 8, 13 (Mich. 2008) (to same effect); *Black's Law Dictionary* (11th ed. 2019) (stating that a "common area" is "realty that all tenants may use"); *see also Martinez v. Woodmar IV Condominiums Homeowners Ass'n, Inc.*, 189 Ariz. 206, 209 (1997) (stating that, in the context of a condominium association, parking lots are "common areas" because all unit owners are entitled to use them). As a result, roofs are considered common areas. *See Winkle*, 400 S.W. 3d at 759–60 (stating that a roof is a common area); *Lopez v. Gukenbach*, 137 A.2d 771, 775 (Pa. 1958) (to same effect); *Reiman v. Moore*, 108 P.2d 452, 455 (Cal. Dist. Ct. App. 1940) (to same effect); *see also* Restatement (Second) of Torts § 360 cmt. d (Am. Law Inst. 1965) (stating that roofs are areas "usually [held] in common with other lessees"); Restatement (Second) of Property § 17.3, cmts. a, h, illus. 14 (Am. Law Inst. 1976) (to same effect); Prosser & Keeton, *The Law of Torts* § 63 441–42 (5th ed. 1984) (recognizing that roofs are common areas that are "parts of the premises maintained for the benefit of the tenants").

### 2. Prizma

¶13        Prizma's sublease is not in the record. Therefore, as to Prizma, we have no lease provision to examine in determining whether Spa retained legal control over the roof. Nevertheless, it is well established that in the absence of an express lease provision, a landlord retains control over the common areas of a multi-tenant building. *See Martinez*, 189 Ariz. at 209 (stating that "[t]raditionally . . . common areas were considered under the control of the landlord, although open and necessary for use by tenants," and that a condominium association "retained control" over common areas (quoting Prosser & Keeton *supra* ¶ 14 at 442)); *Warren*, 400 S.W.3d at 759 (stating "[i]n absence of proof to the contrary, a landlord is presumed to have retained control over premises used in common by different tenants"); *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 121 & n.4 (3rd Cir. 2010) (stating that "the rule adopted by the great majority" of jurisdictions is that "a lessee in a multi-tenant shopping center does not have a duty to maintain common areas controlled by the landlord"); *see also* Restatement of Torts § 360 & cmt.

d (stating that as to premises liability, a lessor remains liable for all areas, including common areas, over which it retains control); Restatement of Property § 17.3 & cmt. h, illus. 14 (same).

¶14     This rule has been consistently applied to the roof of a multi-tenant building.  As one commentator has noted:

> [w]hen different parts of a building . . . are leased to several tenants, the approaches and common passageways normally do not pass to the tenant but remain in the possession and control of the landlord [and, as a result, the] lessor's obligation extends . . . to the roof of the building and any other parts of the premises maintained for the benefit of the tenants within the purpose of the lease.

Prosser & Keeton, *supra* ¶ 14 at 440, 441–42; *see also Reiman* , 108 P.2d at 455 (holding that, absent an express lease provision to the contrary, "[t]here can be no question but that the roof of a building is common to the entire building and where that building is leased to various tenants . . . the control of the roof must remain with the landlord" where a plaintiff was injured when she fell through a skylight on a roof); *Germanson v. Egan*, 196 A. 881, 882–83 (Pa. Super. Ct. 1938) (holding that "[t]he roof of a building rented to different tenants is not leased to the tenant of the floor just below it, but remains in the control of the landlord" where a plaintiff was injured when snow accumulated  on a cracked skylight and caused it to break and fall on the plaintiff).

¶15     Accordingly, Defendants had no legal right to possess or control the roof.

## B.  Actual Control
### 1.

¶16     In Arizona, control over the premises is the hallmark of possession.  *See Sanchez v. City of Tucson*, 191 Ariz. 128, 130 ¶ 10 (1998); *Tostado v. City of Lake Havasu*, 220 Ariz. 195, 202 ¶ 28 (App. 2008); *Martinez v. State*, 177 Ariz. 270, 271 (App. 1993).  Thus, absent legal control, a person may be a possessor of land if he exercises actual, physical control over the premises.  *See Martinez*, 189 Ariz. at 209 (stating that because "the condominium association control[led] all aspects of maintenance and security for the common areas and, most likely, forbid[] individual unit owners from taking on these chores," the common areas were under "its exclusive control"); *Rendall v. Pioneer Hotel*, 71 Ariz. 10, 15–16 (1950) (to

same effect).; *State v. City of Kingman*, 217 Ariz. 485, 488 ¶ 9 (App. 2008) (holding that "when a city exercises *actual control* over [a state] roadway, it may assume joint liability [with the state] for a failure to keep a roadway safe even absent the existence of an [intergovernmental agreement]") (emphasis added).

¶17        The Restatement (Second) of Torts, § 328E(a), which has been adopted by Arizona, also uses an actual control standard. *See Tostado*, 220 Ariz. at 202 ¶ 28 (applying Restatement § 328E); *Timmons v. Ross Dress for Less, Inc.*, 234 Ariz. 569, 570–71 ¶ 8 (App. 2014) (same). Specifically, Restatement § 328E(a) defines a possessor of land as "a person who is in occupation of the land with the intent to control it." *See Monnin v. Fifth Third Bank of Miami Valley, N.A.*, 658 N.E. 2d 1140, 1146 (Ohio Ct. App. 1995) (holding that under Restatement § 328E "[t]he quantum of control necessary for premises liability is one that is physical and actual"); *Medley v. Joyce Meyer Ministries, Inc.*, 460 S.W.3d 490, 499–500 (Mo. Ct. App. 2015) (holding that Restatement of Torts § 328E requires actual, physical control of land); *Hanna v. Creative Designers, Inc.*, 63 N.E. 3d 1036, 1043 ¶ 21 (Ill. App. Ct. 2016) (to same effect).

¶18        A person having actual control over premises must have the authority to: (1) exclude others from the premises; and (2) direct how the premises is repaired, maintained, and used. *See* Restatement (First) of Property § 7(a) & cmt b (Am. Law Inst. 1936) (stating that possession of land requires "control over the land" and the right "to exclude other persons therefrom"); *Hill v. Superior Prop. Mgmt. Services, Inc.*, 321 P.3d 1054, 1059–60 (Utah 2013) (stating that possession of land includes "(a) the right to exclude others from the property altogether and (b) the right to take all necessary precautions and make necessary repairs"); *Hanna*, 63 N.E. 3d at 1043 ¶ 21 (stating that "[t]he concept of 'control' is closely tied with the ability to exclude people from the use of a piece of property or to direct how that property is to be used" (quoting *Williams v. Sebert Landscape Co.*, 946 N.E.2d 971, 974 (2011)); *Medley*, 460 S.W.3d at 499–500 (same); *Monnin*, 658 N.E. 2d at 1146 (same); *see also City of Kingman*, 217 Ariz. at 488–90 ¶¶ 13, 22 (holding that city did not exercise sufficient control over an intersection where it did not have "responsibility for the planning or design of the intersection," nor did it "actually participate in maintaining or operating" the intersection); *Jackson v. Cartwright Sch. Dist.*, 125 Ariz. 98, 102 (App. 1980) (holding that little league owed no duty to plaintiff who fell on a ramp as she was leaving her son's game where school district owned the grounds, had the right to control access to the premises, and any alterations to the premises required its consent).

¶19 Both the authority to exclude others and control over repairs are necessary to impose a duty of care on a possessor of land. Specifically, to keep a premises in a safe condition, a landowner must be able to limit who enters the premises. *See Hill*, 321 P.3d at 1060 ¶ 25. Additionally, a tenant who lacks control over how a premises is maintained and repaired cannot protect entrants from harm. *See Martinez*, 189 Ariz. at 209 (stating that "if the [condominium] association owes no duty of care over the common areas of the property, no one does because no one else possesses the ability to cure defects in the common area"); *Hill*, 321 P.2d at 1060 ¶ 26 (to same effect); *Graham*, 144 N.E.3d at 1245 ¶ 30 (to same effect); *see also* Prosser & Keeton, *supra* ¶ 14 at 386 (stating that "the rights and liabilities arising out of the condition of land . . . have been concerned chiefly with possession of land . . . for the obvious reason that the person in possession of property ordinarily is in the best position to discover and control its dangers, and often is responsible for creating them in the first place"); Restatement of Torts § 343 cmt. b (stating that "an invitee enters [land] upon an implied representation or assurance that [it] has been prepared and made ready and safe for his reception").

¶20 Finally, although a landlord is presumed to retain control of a common area, *supra* ¶ 13, a tenant may overcome that presumption by exercising actual, exclusive[3] control over it. *See Graham v. Lakeview Pantry*, 144 N.E.3d 1237, 1244 ¶ 24 (Ill. App. Ct. 2019) (stating that where plaintiff fell in a common area, the tenant "owed no duty as a renter where it did not retain exclusive control over that common area"); *Marrone v. South Shore Properties*, 29 A.D.3d 961, 963 (N.Y. App. Div. 2006) (holding that tenant owed no duty to plaintiff who fell on a strip mall sidewalk because the tenant "did not own and had no exclusive right to possession of the sidewalks . . . where the accident occurred, and [] it had no obligation or right to perform repairs or clean the sidewalks"); *Torres v. Piggly Wiggly Shop Rite Foods, Inc.*, 600 P.2d 1198, 1200 (N.M. Ct. App. 1979) (same); *see also City of Kingman*, 217 Ariz. at 489 ¶ 16 (stating that in determining whether a city has assumed control over a state roadway, a court must determine whether the state "actually ceded control of aspects of the design, operation or maintenance to the city and the city accepted such responsibility through an intergovernmental agreement or otherwise").

---

[3] The issue of *joint* exclusive control is not before us. Thus, although there may be circumstances where a landlord, tenant, or multiple tenants exercise joint, exclusive control over a common area, we do not reach that issue.

**2.**

**¶21** Defendants did not exercise exclusive control over the roof. Specifically, there is no evidence showing that Defendants had the authority to exclude others from the roof. For example, they could not exclude Chambers, Spa, or each other. Further, there is no evidence they could exclude contractors, social guests, or others from entering the roof. This fact, alone, precludes imposing a duty of care on the Defendants.

**¶22** Additionally, Defendants did not have plenary authority to repair and maintain the roof. For example, here, Spa not only discovered the roof leaks, but also hired and paid Prizma to fix them. And while Direct may have assisted in making these repairs or attempted (through David or Dabush) to give orders to Prizma's workers, it did not pay for them, nor is there any evidence that it had the authority to unilaterally repair the roof or replace the skylights. Moreover, although David *believed* he was responsible for repairing the roof over Direct's part of the warehouse, this simply shows his intent to control the premises; it does not constitute *actual* control of the premises. In short, Defendants' involvement in the repairs made to the roof did not transform them into a possessor of the premises.

**¶23** Dabush, however, relying on *Timmons*, 234 Ariz. 569, asserts that "some control" is all that is necessary to show actual control. Thus, according to Dabush, he need not show Defendants had exclusive control over the roof. Rather, he contends the fact that they made occasional repairs to the roof was sufficient to show control.

**¶24** Dabush's reliance on *Timmons* is misplaced. There, a plaintiff fell on a curb connected to the parking lot in front of the defendant's store. *Timmons*, 234 Ariz. at 571 ¶¶ 9–10. The defendant was the sole tenant of the shopping center, and as a result, its patrons exclusively used the curb to enter or leave the store. *Id.* As a result, the court held that the defendant owed a duty to plaintiff to provide safe ingress and egress from its store. *Id.* at 571 ¶ 12; *see Wickham v. Hopkins,* 226 Ariz. 468, 472 ¶ 18 (App. 2011) (stating that a landowner's duty to business invitees includes the duty to provide safe ingress and egress from its premises); *Stephens v. Bashas' Inc.*, 186 Ariz. 427, 430–31 (App. 1996) (same). Additionally, the store owner in *Timmons* exercised far more than "some" control over the curb. Rather, the owner possessed an easement over the curb for the exclusive use of its business invitees, and it was required to pay for the curb's maintenance, insurance, and taxes. *Id.* at 571– 72 ¶¶ 12–13. Those circumstances are not present here, where multiple subtenants leased portions of the building.

¶25 Thus, we conclude that Defendants were not actual possessors of the roof, and therefore owed no duty to Dabush.

## C. Restatement § 383

¶26 Dabush also claims that Prizma, by making repairs on the roof, "stepped into the shoes" of Spa as a possessor of the roof. Relying on Restatement (Second) of Torts § 383, Dabush claims that "when Prizma agreed to conduct roof repairs, it owed the same duty of care as a possessor of land while working on the roof." We disagree.

¶27 Restatement (Second) of Torts § 383 (Am. Law Inst. 1965) provides:

> [o]ne who *does an act or carries on an activity* upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon . . . as though he were the possessor of the land. (Emphasis added).

Thus, Restatement § 383, by its terms, expressly limits the liability of a contractor to the specific "act" or "activity" performed on behalf of the possessor. Stated another way, the contractor assumes a duty of care that is limited to the work he is performing on the premises. *See* Restatement of Torts § 383 cmt. c ("The rule stated in this Section applies only to harm done by some act done or activity carried on upon the land"); *see also* Restatement of Torts § 384 & cmts. c, h, i, illus. 2 (Am. Law Inst. 1965) ("The rule stated in this Section applies only to physical harm caused by some structure erected or condition created by the servant or contractor."); Restatement of Torts § 422, cmt. c, & illus. 1 and 2 (Am. Law Inst. 1965) (stating that a "possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it," is only liable "to others on or outside the land for physical harm caused to them by the unsafe condition of the structure").

¶28 In *Nguyen v. Nguyen*, 155 Ariz. 290 (App. 1987), the court relied on Restatement § 383 to impose a duty. There, a homeowner asked the defendant, who was temporarily staying in her home, to clean the kitchen floor. *Id.* at 291. While the homeowner was at work, plaintiff came to the house to prepare a meal for the homeowner and her fiancée. *Id.* Defendant waxed the kitchen floor, and when Plaintiff entered the kitchen, she slipped on the floor and injured herself. *Id.* Applying Restatement § 383, the court held that the defendant was liable solely for "creating a risk

of falling by waxing the floor." *Id.*; *see Hill*, 321 P.3d at 1061–62 ¶¶ 35–36 (stating that Restatement § 383 "reaches only physical harm caused by affirmative 'act[s]' or 'activit[ies]' actually carried out by the independent contractor," and "does not impose liability for mere conditions on the land," nor does it create "an expansive theory of premises liability for conditions on the land").

¶29 At bottom, Dabush confuses a contractor's liability for harm caused by negligent repairs with a possessor's general duty regarding the condition of its premises. Thus, for example, his reliance on *Lewis v. NJ Riebe Enter., Inc.*, 170 Ariz. 384 (1992) is misplaced. There, we applied Restatement (Second) of Torts § 414 (Am. Law Inst. 1965), and held "that if a general contractor contractually assumes the responsibility for safety at a work site," it owes a duty to maintain a safe workplace for the employees of subcontractors. *Id.* at 392. However, we made clear that the duty was not based on control "over the premises of the work site, but over the actual work performed by" the subcontractor's employee. *Id.* at 390. In short, the contractor's duty was limited to the work performed and did not extend to the general condition of the premises.

¶30 Thus, for Prizma to step into the shoes of Spa as a possessor under Restatement § 383, Dabush must show that Prizma, by repairing the leaks on the roof, created a risk of falling through Skylight 10. Dabush has failed to make this showing. Simply put, there is no evidence showing that the repairs made by Prizma on the roof, including the work it performed on Skylight 18, created a fall risk with respect to Skylight 10.

¶31 Dabush effectively claims that Prizma owed the duty set forth in Restatement (Second) of Torts § 387 (Am. Law Inst. 1965). But under Restatement § 387, a contractor may only assume the duty of a possessor of land if the possessor "turns over the entire charge of the land." Thus, "[i]t is not enough to create liability under [§ 387] that [a contractor] has undertaken to make specific repairs, or even to inspect the land or building and from time to time make such repairs as he should discover to be necessary." *Id.* § 387, cmt. a. Rather, the rule under Restatement § 387 "is usually applicable where a person, partnership, or corporation making a business of the management of real estate takes over the entire charge of a building or parcel of land, including the renting or collection of rent as well as its maintenance in safe repair." *Hill*, 321 P.3d at 1060 ¶ 31 (stating that Restatement § 387 and its comments provide that "liability does not extend to a contractor who has merely 'undertaken to make specific repairs,'" and that the rule is "'usually applicable' in circumstances where a contractor

11

'takes over the entire charge of a building or parcel of land, *including* the renting or collection of rent as well as its maintenance in safe repair'").

**¶32** There is no evidence showing that Prizma took over the entire charge of the roof as required by Restatement § 387. Rather, Prizma was merely hired by Spa to make specific repairs to the roof. Therefore, Prizma owed no duty under Restatement § 387.

**¶33** Dabush claims, however, that examining the scope of the work performed by Prizma violates the duty framework set forth in *Quiroz*. Specifically, Dabush claims that under *Quiroz*, duty is an issue of law that must be determined before the specific facts of the case may be considered. *Id*. at 564, 574 ¶¶ 7, 63.

**¶34** Dabush unduly restricts the holding of *Quiroz*. Specifically, *Quiroz* states that in addition to duties based on special relationships and public policy, a party may assume a duty based on its conduct. *Id*. at 565, 574 ¶¶ 14, 66. Identifying that conduct necessitates a fact-specific inquiry. *See Sanchez*, 191 Ariz. at 130–31, 172–73 ¶¶ 10, 22 (stating that the existence and extent of an assumed duty is a fact-specific determination); *Tollenaar v. Chino Valley School Dist.*, 190 Ariz. 179, 181 (App. 1997) (same); *see also Jefferson County School Dist. R–1 v. Justus*, 725 P.2d 767, 772 n.5 (Colo. 1986) (stating that whether defendant assumed a duty, and the extent of that duty, is a question of fact for the jury); *Spierer v. Rossman*, 798 F.3d 502, 511 (7th Cir. 2015) (stating that the "existence and extent of an assumed duty is generally a question of fact for the jury").

**¶35** But here, since there is no evidence showing that Defendants assumed a duty under either Restatement § 383 or § 387, we conclude, as a matter of law, they owed no duty to Dabush. *See Tollenaar*, 190 Ariz. at 180–81 (affirming grant of summary judgment where the record did not support the existence of a duty based on negligent undertaking); *Jabo v. YMCA of San Diego County*, 27 Cal.Rptr.3d 588, 609 (Cal. App. 3d 2018) (to same effect); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1493 (8th Cir. 1997) (to same effect).

### D. Assumption of Duty

**¶36** Finally, Dabush asserts that Defendants, by repairing the roof and other sections of the building, assumed a duty of care regarding the condition of the roof. Arizona has adopted Restatement (Second) of Torts § 324A with respect to a negligent undertaking (or assumed duty).

*Tollenaar*, 190 Ariz. at 181; *see also* Restatement (Second) of Torts § 323 (Am. Law Inst. 1965) (negligent undertaking for the protection of another person).

¶37 A duty may be assumed expressly or by conduct. *See* 2 Dan B. Dobbs et al., *The Law of Torts* § 410, at 670 (2011) (stating that an assumption of duty "is a kind of explicit or implicit promise, or at least a commitment, conveyed in words or conduct"); *Yost v. Wabash College*, 3 N.E.3d 509, 517 (Ind. 2014) (stating that the assumption of a duty "requires affirmative, deliberate conduct such that it is 'apparent that the actor . . . specifically [undertook] to perform the task that he is charged with having performed negligently'" (quoting *Lather v. Berg*, 519 N.E.2d 755, 766 (Ind. Ct. App. 1988)); *but see Bishop v. City of Chi.*, 257 N.E. 2d 152, 154–55 (Ill. App. Ct. 1970) (holding that "a case of assumption of duties is not made out by pointing to one or two isolated instances where defendant has performed the service which allegedly indicates defendant has assumed the duty").

¶38 Additionally, an assumed duty is limited to the extent of the specific undertaking. *Tollenaar*, 190 Ariz. at 181. Thus, "the scope of any assumed duty . . . must be limited to the performance [of the] . . . service undertaken," and can "be no broader than the undertaking actually assumed." *Justus*, 725 P.2d at 772–73 n. 5; *see Bd. of Comm'rs of Monroe Cnty v. Hatton*, 427 N.E.2d 696, 699–700 (Ind. Ct. App. 1981 ) (holding that the extent of county's undertaking was limited to a three foot area it mowed next to a roadway; as a result, the county did not assume a duty to trim trees or growth outside of the area); *Pratt v. Robinson*, 349 N.E. 2d 849, 855 (N.Y. 1976) (to same effect); *see also Ainey v. Rialto Amusement Co.*, 236 P. 801, 801–02 (Wash. 1925) (holding that business owner who removed snow from sidewalk in front of its premises did not assume a duty to remove snow from a sidewalk in the alley next to its premises).

¶39 Finally, the nature of the services undertaken must be for the specific purpose of protecting a third party (or their things) from harm. *See* Restatement (Second) of Torts § 324A (Am. Law Inst. 1965) (stating that a negligent undertaking must be "to render services to another which he should recognize as necessary for the protection of a third person or his things"); *Stanley v. McCarver*, 208 Ariz. 219, 223–24 ¶¶ 14–15 (2004) (holding that, despite the absence of a doctor-patient relationship, a radiologist paid by an employer to review a job applicant's x-rays for a pre-employment exam assumed a duty of reasonable care to protect the applicant from harm in reading her x-rays that "comports with Restatement § 324A"); *Justus*, 725

P.2d at 771 (stating that a negligent undertaking requires a plaintiff to "show that the defendant, either through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff."); *Wickham*, 226 Ariz. at 472 ¶ 20 (holding that there was no assumption of duty because the plaintiff failed to show that defendants voluntarily undertook a duty to protect their son from harm).

**¶40** As noted above, even though the existence and extent of an assumed duty is generally a question of fact for the jury, where the facts are undisputed, we may decide the issue as a matter of law. *Supra* ¶¶ 34–35. And here, Dabush has failed to present any evidence showing that Defendants assumed a duty to protect him from harm. Simply put, the record establishes that Defendants undertook to repair a leak in the roof. However, there is no evidence showing that Defendants assumed a duty to protect Dabush from falling through a skylight. Therefore, Dabush cannot show that Defendants assumed a duty under Restatement § 324A.

## Conclusion

**¶41** For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Defendants. Further, we affirm the court of appeals' decision regarding Prizma, but reverse its decision as to Direct.