NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ESTATE OF MARY
O'SULLIVAN-SCHULTZ, et al., *Plaintiffs/Appellants*,

*v.*

KORMAN, LLC, *Defendant/Appellee*.

No. 1 CA-CV 25-0440

FILED 04-20-2026

Appeal from the Superior Court in Maricopa County
No. CV2018-012331
The Honorable Christopher Whitten, Judge

**AFFIRMED**

COUNSEL

DePasquale Law Firm P.C., Phoenix
By Mark J. DePasquale
*Co-Counsel for Plaintiffs/Appellants*

Knapp & Roberts, P.C., Scottsdale
By Craig A. Knapp, David S. Friedman
*Co-Counsel for Plaintiffs/Appellants*

The Cavanagh Law Firm, P.A., Phoenix
By Karen C. Stafford
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

---

**F U R U Y A**, Judge:

**¶1**        The Estate of Mary O'Sullivan-Schultz (the "Estate") appeals the superior court's order dismissing with prejudice all claims against Korman, LLC ("Korman"). The court's judgment was filed after granting summary judgment in favor of Korman on two separate occasions. For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**        Mary O'Sullivan-Schultz ("O'Sullivan-Schultz") was a resident of Copper Village, an assisted living facility for individuals with dementia and Alzheimer's disease. O'Sullivan-Schultz's residence had a courtyard and a gate surrounding it. The gate was unlocked from the outside so visitors could enter but locked from the inside to prevent the residents from leaving the property without the knowledge of caretakers. The gate also had a sign on the outside that read, "Please close gate securely. Keep our residents safe."

**¶3**        Korman contracted with Copper Village to provide pharmaceutical services, including delivery of medications.

**¶4**        Around 2:00 a.m. on June 28, 2018, a Korman delivery driver arrived at Copper Village to drop off medications for three residents, not including O'Sullivan-Schultz. As the delivery driver opened the gate from the outside, a barefoot O'Sullivan-Schultz approached the open gate from inside the property. The delivery driver held the gate open while O'Sullivan-Schultz exited the premises. The delivery driver asked O'Sullivan-Schultz if she was allowed to leave, and O'Sullivan-Schultz said she was. The delivery driver then waited inside the gated area to drop off

---

[1]        When reviewing a court's grant of summary judgment, we "review the facts and reasonable inferences in the light most favorable to the non-moving party." *Rosenberg v. Sanders*, 256 Ariz. 359, 364 ¶ 24 (2023) (citation modified).

the medications with a Copper Village employee. When the Copper Village employee arrived, the delivery driver informed the employee that a barefoot individual had left the property. After searching the area, the employee reported O'Sullivan-Schultz missing to the police around 3:30 a.m.

**¶5** O'Sullivan-Schultz was found deceased on July 7, 2018, and the medical examiner listed her cause of death as environmental hyperthermia. The Estate filed a wrongful death suit in November 2018 against Copper Village, Korman, and others. Korman is the only defendant that is a party to this appeal.

**¶6** In May 2019, Korman moved for summary judgment, arguing the Estate could not prove Korman owed a duty of care to O'Sullivan-Schultz. One month later, before filing a response to Korman's motion, the Estate moved for leave to amend its complaint, seeking to add additional claims against Korman for premises liability, civil trespass, negligent hiring, negligence per se, violating the Adult Protective Services Act ("APSA"), and punitive damages. The court granted the Estate's motion in August 2019.

**¶7** In October 2019, the court granted Korman's motion for summary judgment, finding Korman did not owe a duty of care to O'Sullivan-Schultz. To support this finding, the court analyzed duties created by special relationships, statutory obligations related to Korman's pharmacy license, APSA, the Restatement (Second) of Torts Section 324A ("Section 324A"), and public policy.

**¶8** In July 2020, Korman moved for summary judgment on the amended complaint and argued the Estate's new claims were legally deficient and precluded by the October 2019 summary judgment ruling. The following month, the court granted the Estate's request for relief under Arizona Rule of Civil Procedure ("Rule") 56(d) only as to the claim of trespass. Korman then filed a third motion for summary judgment, contending the Estate lacked standing to assert a civil trespass claim. Following oral arguments and per the court's instruction, Korman filed a combined motion for partial summary judgment, which reiterated Korman's arguments from the second and third motions for summary judgment regarding the civil trespass claim.

**¶9** After some delay, in November 2022, the court addressed Korman's outstanding motions, noting that "the only claims relevant to the pending motions are [the Estate's] claims for Civil Trespass and Premises

Liability against Korman." The court granted summary judgment in favor of Korman as to both claims, and in January 2023, the court entered a Rule 54(c) judgment dismissing all claims with prejudice against Korman.

**¶10** The next month, the Estate moved for a new trial and argued Korman could be held liable under a theory of misfeasance. The court granted the Estate's motion, finding its October 2019 ruling granting summary judgment was legally erroneous and the Restatement (Second) of Torts Section 321(1) ("Section 321(1)") created a duty of care to O'Sullivan-Schultz. Korman appealed, and we vacated the court's order in December 2024. *Est. of O'Sullivan-Schultz v. Korman, LLC*, 1 CA-CV 23-0516, 2024 WL 5165452 (Ariz. App. Dec. 19, 2024) (mem. decision). In doing so, we concluded the court erred by relying on a legal theory raised for the first time in a motion for new trial as its basis for granting a new trial and by applying Section 321(1), which is inconsistent with Arizona law. *Id.* at *2 ¶¶ 7–15. In April 2025, the court reinstated its final judgment from January 2023 dismissing all claims against Korman.

**¶11** The Estate appealed in May 2025, and two months later, Korman moved to dismiss the appeal for lack of appellate jurisdiction because it was untimely. We denied the motion to dismiss but permitted Korman to re-raise these arguments in its answering brief.

## DISCUSSION

**¶12** The Estate argues summary judgment was improper because Korman owed a duty of care to O'Sullivan-Schultz under Section 324A and public policy and because Korman violated APSA. "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373 ¶ 13 (2021); *see also* Ariz. R. Civ. P. 56(a). We review a court's grant of summary judgment de novo. *Dinsmoor*, 251 Ariz. at 373 ¶ 13.

## I. The Estate's Appeal Is Timely.

**¶13** As an initial matter, Korman argues we lack jurisdiction to consider the Estate's appeal as to its Section 324A and public policy arguments because the appeal was untimely. Specifically, Korman contends the Estate's motion for a new trial did not extend the time to appeal the January 2023 final judgment because the motion did not address the issues currently before us.

**¶14**      Failure to file a timely notice of appeal deprives us of jurisdiction to consider the merits of the case. *In re Marriage of Thorn*, 235 Ariz. 216, 218 ¶ 5 (App. 2014). Under Arizona Rule of Civil Appellate Procedure ("ARCAP") 9(a), a notice of appeal is timely when filed within thirty days of the entry of judgment. But if a party timely files a Rule 59(a) motion for a new trial, then the time to appeal extends until the motion is resolved. ARCAP 9(e)(1).

**¶15**      When a court grants a motion for a new trial, it may do so on all or only some issues. Ariz. R. Civ. P. 59(a)(1). If a new trial is granted on all issues, then the final judgment is vacated in its entirety, *Nielson v. Patterson*, 204 Ariz. 530, 530 ¶ 1 (2003) ("[A]n order granting a new trial vacates the original entry of judgment . . . ."), and the issues are no longer appealable, *id.* at 533 ¶ 12 ("A vacated judgment lacks force or effect and places parties in the position they occupied before entry of the judgment."). But if the court grants a new trial only as to some issues, then it follows that the final judgment is only partially vacated. In such cases, the issues for which a new trial was granted become unappealable until a new judgment is entered.

**¶16**      Here, the Estate's Section 324A and public policy claims did not become appealable until April 2025. When the court granted the Estate's motion for a new trial, it ordered the Estate's "common law negligence claim [be] reinstated." This effectively vacated the January 2023 judgment as to the claim of negligence. Thus, the Estate could not appeal the court's dismissal of its negligence claim under any theory until a new judgment was entered, which did not happen until April 2025, when the court reinstated the final judgment. The Estate then appealed within thirty days of the reinstated judgment, so its appeal is timely.

**¶17**      Thus, we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1).

## II.      The Estate's Section 324A Claim Fails.

**¶18**      "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 9 (2007).

**¶19**      As to the first element of a duty, the Estate argues that under Section 324A, Korman—by virtue of its delivery driver opening the outside

gate[2]—"undertook a limited duty of care to the memory care residents to securely close the gate for their protection[,]"assuming the position of "gatekeeper" for the facility. Korman counters there was no duty because the only service undertaken was to deliver medication, not to protect the Copper Village residents.

¶20        Often, the question of whether a defendant owes a duty of care "is a legal matter to be determined before the case-specific facts are considered" and is an issue we review de novo. *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 564 ¶ 7 (2018) (citation modified). However, a duty of care may be established in several ways, including through a special relationship based on "conduct undertaken by the defendant." *Id.* at 565 ¶ 14. Section 324A addresses liability specifically to a third person for negligent performance of an undertaking or assumed duty and states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

¶21        Under this section, a duty "may be assumed expressly or by conduct." *Dabush v. Seacret Direct, LLC*, 250 Ariz. 264, 272 ¶ 37 (2021). The scope of such a duty is "limited to the performance of the service undertaken, and can be no broader than the undertaking actually assumed." *Id.* at 273 ¶ 38 (citation modified). Further, for an assumed duty to exist, "the nature of the services undertaken must be for the specific purpose of protecting a third party (or their things) from harm." *Id.* at 273 ¶ 39. An assumed duty does not exist simply because the defendant fails to protect the third party. While "the existence and extent of an assumed duty

---

[2]        The Estate argues Korman is vicariously liable for its delivery driver's conduct. Because the Estate's underlying negligence claims fail, we do not address this argument.

is generally a question of fact for the jury, where the facts are undisputed, we may decide the issue as a matter of law." *Id.* at 273 ¶ 40.

¶22 The Estate argues that by "taking control" of "the secure gate with safety-related instructions posted thereon[,]" Korman's delivery driver "modified" the delivery service into one "implicating the residents' safety." The Estate also argues in the alternative that by opening the gate with the warning sign in O'Sullivan-Schultz's presence, or perhaps by holding it open, the delivery driver assumed a duty to "securely clos[e] the gate," irrespective of Korman's obligation to deliver medications. We disagree.

¶23 The Estate has not shown how opening a gate is undertaken for the specific purpose of protection, as required by Section 324A and *Dabush*. In that case, a plaintiff was injured when he fell through a skylight on the roof of a multi-tenant commercial building. *Id.* at 266 ¶ 1. The plaintiff sued two sublessees of the building, claiming that by conducting repairs on the roof, they assumed a duty of care regarding its condition. *Id.* at 272 ¶ 36. Our supreme court rejected this argument for broad assumption of duty, *id.* at 273 ¶ 38 ("[A]n assumed duty is limited to the extent of the specific undertaking."), and concluded there was no assumed duty because the plaintiff failed to present evidence showing that the narrow service of repairing the roof was undertaken specifically to protect the plaintiff from falling through a skylight, *id.* at 273 ¶ 40.

¶24 So too here, the Estate has not identified specific evidence in the record establishing how opening the gate, or keeping it open, was undertaken specifically to protect O'Sullivan-Schultz. Regardless, in this context, we cannot reasonably conclude that opening or holding open a gate to an assisted living facility could ever be undertaken to protect a resident living within the premises. We are not convinced by the Estate's assertion that the warning sign establishes a protective purpose. The sign reads, "Please close gate securely. Keep our residents safe." It instructs visitors to close the gate but does not address opening or holding the gate open, which is the conduct the Estate maintains triggered the assumed duty.

¶25 At oral argument, the Estate suggested that the conduct underlying the assumed duty is a continuous one comprised of three actions: opening the gate, holding it open, and closing it. It further suggested that because the driver's conduct was continuous, an instruction to close the gate imposed a duty of protection at all stages. But the Estate infers too much in its reading of the sign. While we view all reasonable inferences in the Estate's favor as the non-moving party, *Rosenberg v.*

*Sanders*, 256 Ariz. 359, 364 ¶ 24 (2023), there is no reasonable interpretation of the sign that could reference all three actions. Thus, we do not view the sign as supporting an assumed duty under the requirements of Section 324A.

**¶26** We further reject the Estate's position on the warning sign because it resembles a foreseeability argument that Korman's delivery driver assumed a legal duty because the sign should have caused the driver to foresee that failing to close the gate would lead to harm. But we do not consider foreseeability in a duty analysis, so this argument fails. *Gipson*, 214 Ariz. at 144 ¶ 15 (rejecting foreseeability as a factor when determining the existence of a duty).

**¶27** Thus, based on the Estate's argument, we cannot conclude the driver assumed a duty of care to protect O'Sullivan-Schultz merely by opening the gate and entering the premises.

### III. The Estate's Public Policy and APSA Claims Fail.

**¶28** Aside from special relationships, a duty of care may be established through public policy underlying state or federal statutes. *Quiroz*, 243 Ariz. at 565 ¶ 15. For a public policy duty to exist, the plaintiff must be "within the class of persons to be protected by the statute and the harm that occurred . . . is the risk that the statute sought to protect against." *Id.* at 565 ¶ 15.

**¶29** The underlying public policy of APSA is to provide "a broad remedial cause of action against caregivers who, by means of abuse, neglect, or exploitation, endanger the life or health of a vulnerable adult." *Delgado v. Manor Care of Tucson AZ, LLC*, 242 Ariz. 309, 312 ¶ 15 (2017); *see also* A.R.S. § 46-455(A)–(B). Thus, the class of persons protected by the statute is vulnerable adults, and the harm APSA seeks to protect vulnerable adults from is neglect, abuse, or exploitation at the hands of caregivers.

**¶30** Here, the Estate contends the public policy underlying APSA created a duty of care to O'Sullivan-Schultz. Korman argues its delivery driver is not a health care provider and thus not subject to APSA. We agree with Korman.

**¶31** Even if we assumed, without deciding, that O'Sullivan-Schultz constitutes a vulnerable adult and the delivery driver's conduct constitutes neglect, abuse, or exploitation, the Estate has failed to establish that Korman's delivery driver acted as a caregiver.

**¶32** While the statute does not explicitly use the term "caregiver," it imposes liability on "any person or enterprise that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care" to a vulnerable adult. A.R.S. § 46-455(B). A direct caregiver-patient relationship is not required to impose liability, *Corbett v. ManorCare of Am., Inc.*, 213 Ariz. 618, 629 ¶ 36 (App. 2006), but to be a caregiver, the defendant must take responsibility for the vulnerable adult's safety and well-being, *In re Estate of Wyatt*, 235 Ariz. 138, 140 ¶ 8 (2014) (defining "care" as "charge, supervision, management: responsibility for or attention to safety and well-being" (citation modified)).

**¶33** In its complaint, the Estate acknowledged Korman's delivery driver arrived at Copper Village for the purpose of delivering medications and "had a contractual obligation to safely dispense medications." This role does not place the delivery driver in charge of O'Sullivan-Schultz's safety; rather, the driver was responsible for the safe and competent delivery of the medications.

**¶34** The Estate argues the delivery driver assumed a legal duty to provide care when she "took control of the gate which warned that it should be shut securely to protect the residents." But opening a gate, even one with a warning sign, does not equate to providing care to a vulnerable adult. If that were the case, any person who opens any gate, door, garage, or window for—or at the request of—a vulnerable adult would become a "caregiver" and be subject to liability under APSA. We do not read the statute so broadly as to encompass such passing acts. *See Guerra v. State*, 237 Ariz. 183, 187 ¶ 20 (2015) ("When a court or legislature adopts a no-duty rule, it generally does so based on concerns that potential liability would chill socially desirable conduct . . . ."). Thus, because Korman's delivery driver is not a caregiver subject to APSA, the public policy underlying APSA does not create a duty for Korman vis-à-vis O'Sullivan-Schultz.

**¶35** The Estate also contends the court erred in dismissing its claim that Korman directly violated APSA.[3] But because we conclude Korman's delivery driver is not a caregiver subject to APSA, the Estate cannot sustain its claim. Thus, the Estate's direct violation claim also fails.

---

[3] Korman argues the Estate's claim of a direct violation of APSA is improper because the Estate abandoned its claim. Because we conclude the Estate's claim fails, we need not address the issue of abandonment.

## IV.    We Grant Costs on Appeal.

**¶36**        Korman requests its costs on appeal pursuant to A.R.S. Section 12-341. Because Korman is the successful party on appeal, we grant its request for costs, subject to its compliance with ARCAP 21.

### CONCLUSION

**¶37**        We affirm the superior court's grant of summary judgment.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR